# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NOKIA SOLUTIONS AND NETWORKS OY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No.: N19C-10-262 AML CCLD |
| COLLISION COMMUNICATIONS, INC., | ) ) ) ) | |
| Defendant. | ) | |

Submitted: January 31, 2020
Decided: April 30, 2020

**Upon Defendant's Motion to Stay: GRANTED**

## MEMORANDUM OPINION

James J. Freebery, Esquire, Daniel J. Brown, Esquire, Hayley J. Reese, Esquire of McCARTER & ENGLISH, LLP, Wilmington, Delaware, and David Himelfarb, Esquire of McCARTER & ENGLISH, LLP, Boston, Massachusetts, *Attorneys for Plaintiff Nokia Solutions and Networks Oy*.

Douglas D. Herrmann, Esquire, James H.S. Levine, Esquire of PEPPER HAMILTON LLP, Wilmington, Delaware, and Tyler E. Chapman, Esq. of TODD & WELD, LLP, of Boston, Massachusetts, *Attorneys for Defendant Collision Communications, Inc*.

**LeGROW, J.**

The plaintiff in this action is a large multi-national corporation that seeks a declaration that it has no contractual obligations to the defendant, which is a small technology startup. The defendant contends it entered into a binding oral agreement with the plaintiff and incurred substantial expenses in reliance on the plaintiff's representations that the parties had reached a final agreement. Now, the defendant seeks to stay this action in favor of a similar action the defendant filed in Massachusetts federal court.

The defendant's motion requires this Court to resolve two issues. First, the Court must decide the threshold question of whether the Delaware action, which was filed two days before the Massachusetts action and minutes after the plaintiff terminated the parties' standstill agreement, is entitled to deference as the "first-filed" action. Second, if the Delaware action is not first-filed, the Court must determine whether the *forum non conveniens* factors weigh in favor of a stay because litigating in Delaware would expose the defendant to substantial hardship. For the reasons that follow, I conclude a stay is warranted because the two actions contemporaneously were filed and the *forum non conveniens* framework favors a stay, particularly because of the broader scope of the Massachusetts action, the risk of inconsistent rulings, the inevitable and substantial waste of party and judicial resources if both actions proceed simultaneously, and the fact that the parties naturally are aligned as plaintiff and defendant in the Massachusetts action.

**FACTS AND PROCEDURAL BACKGROUND**

Unless otherwise noted, the following facts are drawn from the complaint and the record provided by the parties, which includes the complaint pending in the United States District Court in Massachusetts. Nokia Solutions and Networks Oy ("Nokia") filed this declaratory judgment action in Delaware after the parties' settlement negotiations broke down. The parties' dispute relates to an alleged oral agreement between Nokia and Collision Communications, Inc. ("Collision"), who is the defendant in this action.

Collision, which is a small startup company with a "pre-revenue" financial position,[1] is incorporated in Delaware and has a principal place of business in New Hampshire. Collision owns a proprietary signal processing technology.[2] Nokia, which is incorporated in and has its principal place of business in Finland, is an international developer, manufacturer, and supplier of communications and connectivity solutions.[3]

For approximately 18 months, Nokia and Collision negotiated about Nokia's interest in purchasing Collision's technology and incorporating that technology into Nokia's wireless platform. Those negotiations included a preliminary "Project Agreement" through which Collision demonstrated the viability of integrating its

---

[1] Compl. ¶ 24.
[2] *Id.* ¶ 12.
[3] *Id.* ¶ 11.

technology with Nokia's.[4]  As that Project Agreement was nearing completion, the parties began discussing a formal, comprehensive contract.  Those negotiations occurred in person in New Hampshire and Finland[5] as well as by phone and email. Jared Fry, Collision's Chief Operating Officer, conducted those phone and email negotiations on Collision's behalf from his office in Boston, Massachusetts.[6]  Draft agreements that the parties exchanged in May 2017 contained Delaware choice of law provisions.[7]

Collision alleges the parties reached a verbal agreement in June 2017 as to all material terms of an agreement whereby Nokia would license Collision's technology and Collision would develop a software solution to integrate that technology with Nokia's cellular base station products.[8]  Among the material terms that Collision contends the parties agreed upon was a $20 million license fee and a $3 million payment for the integration software.  In addition, Collision contends Nokia insisted that Collision refrain from licensing its technology to Nokia's competitors.

In reliance on that verbal agreement, Collision avers it began developing the agreed upon software while abiding by the parties' exclusivity agreement.[9]  For

---

[4] *Id.* ¶¶ 25-28.  The Project Agreement was governed by the laws of Finland.  This dispute does not involve the Project Agreement.
[5] Mass. Compl. ¶¶ 28, 54; Compl. ¶ 34.
[6] Aff. of Jared Fry (hereinafter "Fry Aff.") ¶ 4.
[7] Pl.'s Answering Br. in Opp'n to Def.'s Mot. to Dismiss or Stay (hereinafter "Answering Br."), Exs. C, D.
[8] Mass. Compl. ¶ 3.
[9] *Id.* ¶¶ 5, 8.

several months, Nokia allegedly continued to reassure Collision that Nokia's top level executives had approved the deal terms and the parties' agreement soon would be reduced to writing. Collision maintains that its work on the Nokia project consumed all its limited resources for more than a year.[10] The contract Nokia ultimately drafted, however, differed from Collision's understanding of the parties' agreement. When Collision refused to agree to Nokia's terms, Nokia walked away from the negotiations, taking the position that the parties never entered into a binding agreement.

For a period of months, Collision threatened Nokia with litigation and ultimately sent a demand letter in July 2019 claiming that Collision incurred damages in excess of $1 million after Nokia breached the parties "'binding agreement to become technology partners.'"[11] Collision offered to engage in mediation in an effort to resolve the parties' dispute. Nokia agreed, and the parties entered into a standstill agreement in which both agreed not to file any lawsuit while settlement discussions were ongoing.[12] The standstill agreement terminated "immediately after any unsuccessful mediation between the [p]arties[.]"[13]

---

[10] *Id.* ¶ 9.
[11] Compl. ¶¶ 55-56.
[12] Opening Br. in Supp. of Def.'s Mot. to Dismiss or Stay (hereinafter "Opening Br."), Ex. 4.
[13] *Id.* ¶ 2.

Both sides retained Massachusetts counsel and engaged in mediation in New York City on October 24, 2019. Although the mediation concluded without a resolution, the parties agreed to continue their settlement efforts. Nokia avers that it conditioned its continued participation on Collision dropping a particular settlement demand. On October 30, 2019, Nokia's counsel emphasized to Collision the need for an immediate answer as to whether Collision would drop that demand. Shortly before 5:00 p.m., the parties' attorneys spoke by phone, and Collision's attorney indicated it would not drop that demand. Nokia's attorney then stated that Nokia considered the mediation unsuccessfully concluded.[14]

Approximately two minutes later, Nokia filed this action seeking a declaratory judgment "that neither party has any further obligations to the other."[15] Nokia also emailed Collision's counsel minutes after the filing, confirming that Nokia considered the mediation concluded and was withdrawing all settlement offers previously made.[16] Nokia did not at that time, however, alert Collision to the Delaware filing. Nokia did not serve Collision with the Delaware complaint until November 7, 2019.

Meanwhile, on November 1, 2019, before it was aware of the Delaware action, Collision filed suit in Massachusetts federal court (the "Massachusetts Action"). In

---

[14] Aff. of David Himelfarb, Esq. (hereinafter "Himelfarb Aff.") ¶¶ 11-16.
[15] Compl. ¶ 64.
[16] Opening Br., Ex. 5.

that action, Collision advanced several claims against Nokia, including claims for breach of contract, detrimental reliance, misrepresentation, quantum meruit, and an unfair trade practices claim under Massachusetts law. Collision's original complaint in the Massachusetts action inadvertently named Nokia Corporation and Nokia, Inc. as defendants. When it realized it had named the wrong parties, Collision filed an amended complaint on December 12, 2019, which named the correct defendant, Nokia Solutions and Networks Oy.

Collision then moved to stay or dismiss this action on the basis of *forum non conveniens*.[17] The parties briefed and argued that motion. Shortly before oral argument on Collision's motion, Nokia moved to dismiss the Massachusetts Action for lack of personal jurisdiction, failure to state a claim, and on the basis of *forum non conveniens*. For the reasons set forth below, I hereby stay this action pending resolution of the Massachusetts Action.

## ANALYSIS

In its motion, Collision argues this action should be stayed or dismissed in favor of the "more comprehensive" Massachusetts Action because Nokia filed the Delaware action preemptively, Collision is the natural plaintiff in the parties'

---

[17] Collision also moved to stay discovery. The Court entered an order on February 11, 2019 staying discovery until the motion to stay or dismiss was resolved. Having now concluded that this action should be stayed, the parties may proceed with discovery as permitted by the United States District Court for the District of Massachusetts.

dispute, and litigating both actions simultaneously would cause Collision undue hardship. Nokia, on the other hand, argues dismissal or a stay is not appropriate because the Massachusetts federal court has no jurisdiction over Nokia, and there is no compelling reason to depart from Delaware's policy of deferring to the first-filed proceeding under *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*[18]

This Court may, in its discretion, stay or dismiss an action in favor of an action pending in another jurisdiction.[19] When considering such a motion, the Court first considers which action was filed first. When a Delaware action was filed first, the courts in this state generally uphold the plaintiff's choice of forum unless litigating in Delaware presents an overwhelming hardship to the defendant.[20] Conversely, if a foreign action was first-filed, principles of comity and fairness generally favor staying or dismissing the later-filed Delaware action.[21] When the actions contemporaneously were filed, this Court evaluates a motion to dismiss or stay under

---

[18] 263 A.2d 281 (Del. 1970).

[19] *Lincoln Benefit Life Co. v. Wilmington Trust, N.A.*, 2019 WL 1307870, at *2 (Del. Super. Apr. 4, 2019); *BP Oil Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382, at *2 (Del. Super. Feb. 25, 2010).

[20] *United Phosphorus, Ltd. v. Micro-Flo, LLC*, 808 A.2d 761, 764 (Del. 2002).

[21] *McWane*, 263 A.2d at 283; *Dura Pharm., Inc. v. Scandipharm, Inc.*, 713 A.2d 925, 928 (Del. Ch. 1998).

the established *forum non conveniens* framework, without applying *McWane's* preference for one action over the other.[22]

## I. The Delaware and Massachusetts Action were filed contemporaneously.

Under *McWane*, and in recognition of principles of comity and the need for an orderly and efficient administration of justice, Delaware courts abide by the general rule that "litigation should be confined to the forum in which it is first commenced[.]"[23] *McWane* and the cases that follow it "establish a strong preference" for litigating disputes in the forum in which the first action was filed.[24] That preference applies when (1) there is a prior action pending elsewhere, (2) in a court capable of providing prompt and complete justice, (3) involving the same parties and issues.[25] The Court, however, does not give preference to either side's choice of forum when two actions are considered contemporaneously filed.[26]

Collision argues the Delaware and Massachusetts actions were filed contemporaneously, and the Delaware action only was filed before the Massachusetts action because Nokia raced to the courthouse within minutes of terminating the mediation and the parties' standstill agreement. Collision contends Nokia's filing is an anticipatory declaratory judgment action, and the parties are

---

[22] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Constr. Co.*, 2014 WL 703808, at *2 (Del. Super. Feb. 17, 2014).
[23] *McWane*, 263 A.2d at 283.
[24] *LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015).
[25] *McWane*, 263 A.2d at 283.
[26] *HFTP Invs., L.L.C. v. ARIAD Pharm., Inc.*, 752 A.2d 115, 122 (Del. Ch. 1999).

more naturally situated with Collision bringing a claim and Nokia defending it. Nokia, on the other hand, argues the Delaware action was filed first, the *McWane* factors are satisfied, and there is no compelling reason to deviate from *McWane*'s presumption in favor of the first-filed action.

In order to determine whether an action is first-filed, the Court must consider the circumstances surrounding both filings.[27] There is no bright line rule the Court follows in performing this analysis. Rather, the Court must consider its "complementary objectives of discouraging both forum shopping and contrived races to the courthouse."[28]

Generally, the Court considers matters filed within a couple days to be filed contemporaneously in order to avoid rewarding a party merely for winning a race to the courthouse.[29] This result particularly is appropriate in cases where the party that won the race to the courthouse filed an anticipatory declaratory judgment action that reverses the parties' natural alignment as plaintiff and defendant.[30] In other words, if the party that naturally is defending a claim files an action for declaratory

---

[27] *In re Bay Hills Emerging Partners I, L.P.*, 2018 WL 3217650, at *7 (Del. Ch. July 2, 2018).
[28] *Rapoport v. Litig. Tr. of MDIP Inc.*, 2005 WL 3277911, at *2 (Del. Ch. Nov. 23, 2005) (internal citations omitted).
[29] *Lincoln Benefit*, 2019 WL 1307870, at * 3; *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 116 (Del. Ch. 2009).
[30] *Lincoln Benefit*, 2019 WL 1307870, at *3; *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crosstex Energy Servs., L.P.*, 2013 WL 6598736, at *4 (Del. Super. Dec. 13, 2013) (hereinafter "*Crosstex*"); *Playtex, Inc. v. Columbia Cas. Co.*, 1989 WL 40913, at *4-5 (Del. Super. Apr. 25, 1989).

9

judgment within days of the natural plaintiff filing an action elsewhere, Delaware courts are inclined to find the actions were filed contemporaneously. For example, in *Bay Hills Emerging Partners I, L.P.*, the court concluded that actions filed within eight days of each other were filed contemporaneously because the parties filing the Delaware action were acting in anticipation of a claim being brought against them, and the timing of the filing was "suspicious."[31] As the Court of Chancery has explained, Delaware courts "take[] a rather dim view of tactical maneuvers and improper manipulation of the litigation process by parties seeking to invoke the principles of comity and efficiency underlying the *McWane* doctrine."[32]

Nokia endeavors to resist this line of cases by arguing (1) the Massachusetts Action was not properly filed until several weeks after the Delaware action, and (2) Collision filed the Massachusetts Action in response to the Delaware action. As to the first argument, Nokia relies upon *Dura Pharmaceuticals, Inc. v. Scandipharm, Inc.*, in which the Court of Chancery found that an Alabama action was first-filed even though it was initiated only four days before a Delaware action.[33] In *Dura*, however, there was no race to the courthouse because the parties had been free to file suit for several weeks, and the Delaware action was filed in reaction to the

---

[31] 2018 WL 3217650, at *7-8.
[32] *Rapoport*, 2005 WL 3277911, at *4 (internal quotations omitted).
[33] 713 A.2d at 927-28.

Alabama action.[34]  Unlike the facts in *Dura*, it is evident from the record here that Collision did not delay at all in filing its action.  Collision filed the Massachusetts Action two days after the parties' standstill agreement expired.  Although Collision initially named the incorrect defendant, Collision's conduct indicates it was acting promptly to pursue its claim.  As to Nokia's argument that the Massachusetts Action was "reactive," the record simply does not support this contention.  To the contrary, Collision filed the original Massachusetts complaint on November 1, 2019, several days *before* it was served with or aware of the Delaware Action.

Here, the actions were filed within two days of each other and immediately after the standstill agreement expired.  Nokia plainly engaged in a race to the courthouse by filing the Delaware action within minutes of withdrawing from the mediation and the parties' standstill agreement.  The Delaware action is an anticipatory declaratory judgment action, while the parties naturally are aligned in the Massachusetts action.  Collision filed the Massachusetts action promptly after the standstill agreement was lifted and before it received any notice that the Delaware action was filed.  In addition, Nokia is neither a resident of Delaware nor incorporated here, so the Court's traditional deference to the plaintiff's choice of forum is not as strong as it is in the case of a plaintiff who resides here.[35]

---

[34] *Id*. at 929.

[35] *Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 86 A.3d 1102, 1108 (Del. 2014).

11

Accordingly, considering the circumstances of the parties' interactions and both actions' filing, the Delaware action is not entitled to *McWane*'s deference to first-filed actions.

## II. The *forum non conveniens* factors weigh in favor of staying this action in favor of the Massachusetts Action.

Having concluded the two actions were filed contemporaneously, the Court applies the traditional *forum non conveniens* framework to determine whether to stay the Delaware action. The party seeking a stay bears the burden of showing it is entitled to that extraordinary relief. Where, as here, a stay likely will have the same effect as a dismissal, Collision must show that one or more of the *forum non conveniens* factors weigh so heavily in Collision's favor that it will face overwhelming hardship if the Delaware action proceeds.[36] The "overwhelming hardship" standard is "not intended to be preclusive," but rather is a "stringent standard that holds defendants who seek to deprive a plaintiff of her chosen forum to an appropriately high burden."[37]

The *forum non conveniens* factors require the Court to weigh the following considerations: (i) the relative ease of access to proof, (ii) the availability of compulsory process for witnesses, (iii) the possibility of a view of the premises, (iv) whether the controversy depends on the application of Delaware law that the

---

[36] *See id*. at 1104; *Citigroup*, 964 A.2d at 117 & n.16.
[37] *Martinez*, 86 A.3d at 1105.

Delaware courts properly should decide, (v) the pendency or non-pendency of a similar action in another jurisdiction, and (vi) all other practical problems that would make trying the case easy, expeditious, and inexpensive.[38] Collision argues the factors weigh heavily in its favor because (i) Nokia filed the Delaware action preemptively in anticipation of Collision filing an action, (ii) the two actions involve the same parties and facts, (iii) none of the facts or legal issues implicate Delaware in any way, and (iv) allowing both actions to proceed would risk inconsistent rulings. Nokia, on the other hand, argues none of the *forum non conveniens* factors favor Massachusetts, and Collision therefore cannot possibly meet the overwhelming hardship standard.

Two of the *forum non conveniens* factors have no relevance in this particular action: the availability of compulsory process and the possibility of viewing the premises. There are no premises relevant to the issues in this litigation, and Collision has not identified any witnesses or third parties whose appearance this Court could not compel.[39] Additionally, the relative ease of access of proof does not favor either party in this case. Collision argues all its documents and witnesses are located in or near Boston, but has not identified why it would be substantially more difficult to

---

[38] *HFTP Invs.*, 752 A.2d at 122-23 (citing *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964)).

[39] *Playtex*, 1989 WL 40913, at *8 ("[I]n order to prevail on a *forum non conveniens* motion to dismiss, [movant] must identify the inconvenienced witnesses and the specific substance of their testimony.").

access that proof in Delaware. Without any particular explanation why accessing proof would be more or less difficult in a particular location, the Court assumes that "modern methods of information transfer" will permit access to documents without substantial effort and thereby virtually negate this factor of the analysis.[40]

The other factors in the analysis, however, favor Collision, particularly the pendency and scope of the Massachusetts action and the other practical considerations relevant to the Court's analysis. First, other than Collision's incorporation in this state, neither the parties nor the dispute have any apparent connection to Delaware. Collision seeks to enforce an oral agreement between the parties. That agreement was negotiated in various locations, but never in Delaware. Although some of the draft contracts the parties exchanged identified Delaware in a choice of law provision, those agreements never were signed, and there does not appear to be any issue in this case over which Delaware law presumably will govern, let alone an issue the Delaware courts have a substantial interest in deciding.

Second, the pending Massachusetts Action involves the same parties and facts but is broader and involves statutory and common law claims in addition to the contractual claims pending here.[41] Moreover, if both the Massachusetts and Delaware actions proceed simultaneously, there is a real risk that the parties could

---

[40] *Rapoport*, 2005 WL 3277911, at *5 (alterations omitted).
[41] *See Crosstex*, 2013 WL 6598736, at *9 (the fact that the foreign action involved claims under a foreign statute was relevant to the *forum non conveniens* analysis).

14

receive inconsistent rulings, presenting an irreconcilable conflict that principles of comity are intended to avoid.[42] Although Nokia argues forcefully that the Massachusetts federal court lacks jurisdiction over Nokia, that issue squarely is presented in the pending motions to dismiss in Massachusetts and is better reserved for the Massachusetts court to decide in the first instance. If the Massachusetts court determines it has jurisdiction, that action will move forward and will involve the same parties and factual issues as this case, along with additional claims not pending here. Conversely, if the Massachusetts federal court dismisses that case for lack of personal jurisdiction, the parties easily could return to Delaware and lift the stay. On balance, the breadth of the Massachusetts Action and the risk of inconsistent rulings favors Collision.

Finally, the last factor is the "other practical considerations" relevant to promoting the efficient administration of justice. The Delaware Supreme Court recently explained that this factor is "neither hollow in meaning nor rigid in application."[43] The Court may weigh the efficient administration of justice and analogous considerations and determine whether it would be "extraordinarily expensive and cumbersome for a defendant to litigate a case in Delaware[.]"[44] As

---

[42] *See Lisa, S.A. v. Mayorga*, 993 A.2d 1042, 1048 (Del. 2010); *Lincoln Benefit*, 2019 WL 1307870, at *3.

[43] *Martinez*, 86 A.3d at 1112.

[44] *Id.*

the Court of Chancery found in *Bay Hills*, allowing two substantially overlapping actions to proceed simultaneously would require two courts to adjudicate the same contractual dispute, risking a significant waste of judicial resources and inconsistent resolution of the issues.[45] Moreover, although Collision technically could litigate this action in Delaware and compel its employees to testify here, the Court is cognizant of Collision's status as a small startup with limited resources. The expenses Collision will incur attending and participating in proceedings and trial in this state will be more substantial than those it will incur in Massachusetts. Allowing the Massachusetts Action to move forward alone allows Collision to pursue its claims more economically and places both the parties in their natural alignment as plaintiff and defendant.[46] Finally, the Court is unconvinced by Nokia's argument that the fact that Collision is incorporated here weighs in favor of denying the motion. As noted above, Delaware has no substantial interest in adjudicating this action, unlike an action implicating a Delaware corporation's internal affairs.[47]

To summarize, the factors relevant to the Court's analysis either are neutral or weigh in favor of granting Collision's motion to stay this action in favor of the Massachusetts Action. The Court finds that requiring Collision to litigate two

---

[45] 2018 WL 3217650, at *9.

[46] *See Crosstex*, 2013 WL 6598736, at *10 (reasoning that the practical considerations relevant to the Court's inquiry include the parties natural alignment as claimant and defendant).

[47] *See Rapoport*, 2005 WL 3277911, at *7.

duplicative actions simultaneously would present an overwhelming hardship, and the Massachusetts Action should proceed because (i) it is more comprehensive and more economical from Collision's perspective,[48] and (ii) Massachusetts has a stronger connection than Delaware to the facts of the case.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay is **GRANTED.** This action shall be stayed pending resolution of the Massachusetts Action. The stay shall be lifted upon motion or stipulation of the parties. **IT IS SO ORDERED.**

---

[48] From Nokia's perspective, the costs of litigating in Delaware or Massachusetts should be the same.